UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:21-cv-61993-WPD

ANIMACCORD LTD.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Animaccord Ltd. ("Animaccord" or "Plaintiff"), by and through its undersigned counsel, hereby moves this Honorable Court for an entry of final default judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").[1] In support thereof, Plaintiff submits the following Memorandum of Law.

**I.    INTRODUCTION**

Plaintiff initiated this action against Defendants through the filing of its Complaint for trademark counterfeiting and infringement, false designation of origin, common law unfair

---

[1] Plaintiff has not included Defendant Nos. 4 (BICXEMY GIFTS); 6 (UXO party); 8 (redbrokoly's booth); 9 (Essex Graphic Display Ltd); 11 (1to3shop-store); 14 (coinsberg); 30 (JTCreationsss); 42 (PewPewShopCo); 45 (UsGirlsCrafts); 73 (CraftyNessa24); 94 (rociosuniquecreation); 95 (ArelneRojasB); 100 (BettyJaneByEstella); 101 (Maeslittleoven); 102 (GloYourBow); 105 (LallyBun); 106 (HeartYourPartyShop); 107 (customtshirtsfl); 109 (NannisEventos); 110 (Bluecr4ftsByOlivia); 14 (LeahBowsCreations); 116 (KayPersonalizados); 118 (SimplyPurelyHandmade); 124 (PartiesbyGreta); 128 (MsVictoriasEmporium); 130 (LallyBun); 131 (ChrisHoskinsShop); 135 (dreamsbyADA); 141 (FiveYDesigns); 142 (YourDesing); 143 (SugarandSpiceBows4u); 148 (JJFromMyCircle); 153 (sanfu E); 158 (Marie Cineline); 163 (Tab's Chic Boutique); or 164 (HESHUORA).

competition, common law trademark infringement, and infringement of copyright. Defendants are in default, and the prerequisites for a default judgment have been met. As relief, Plaintiff seeks default judgment finding Defendants liable on all counts of its Complaint. Plaintiff prays such judgment includes the entry of a permanent injunction and an award of statutory damages to Plaintiff for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c). Plaintiff also requests the Court order the listings and associated images of the goods bearing counterfeits and/or infringements of Plaintiff's trademarks and copyrights being used by Defendants be permanently removed to ensure the associated e-commerce marketplace stores may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiff's trademarks and copyrights, and infringing upon Plaintiff's intellectual property rights. Plaintiff further requests the Court cancel, or at Plaintiff's election, transfer the domain names at issue to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits of Plaintiff's trademarks and copyrights, and infringing upon Plaintiff's rights.

## II. STATEMENT OF FACTS

### A. Plaintiff's Rights

Plaintiff is the owner of the federally registered trademarks and copyrighted works identified in paragraphs 4 & 5 and Schedules "B," "C," and "D" of the Declaration of Iullia Belkova in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunciton, and Order Restraining Transfer of Assets ("Belkova Decl. in Support of TRO") [ECF No. 5-1] (the "Masha and the Bear Marks"). (*See also* United States Trademark Registrations for the Masha and the Bear Marks and Copyrighted Works attached as Composite Exhibits 1 & 2 to the Complaint [ECF No. 1-1 & 1-2].). The Masha and the Bear Marks and Copyrighted Works are used in connection with the design, marketing, and distribution of genuine

2

high-quality Masha and the Bear branded goods. (Belkova Decl. in Support of TRO ¶¶ 6-7.) The Masha and the Bear Marks and Copyrighted Works are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned. (*Id.* at ¶¶ 12-13.) Moreover, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (*Id.* at ¶9.)

Furthermore, Plaintiff has extensively used, advertised, and promoted the Masha and the Bear Marks and Copyrighed Works in the United States, and has carefully monitored and policed the use of the Masha and the Bear Marks. (*Id.* at ¶ 13.) As a result of Plaintiff's efforts, the Masha and the Bear Marks have acquired fame in the consumer market. (*Id* at 12.) The Masha and the Bear Marks have come to symbolize the enormous goodwill of Plaintiff's products throughout the United States. (*Id.*)

      **B.    Defendants' Infringing Acts**

As alleged by Plaintiff, admitted by default, and established by the evidence submitted herewith, Defendants operate and control e-commerce stores via third-party marketplace websites under their seller identification names and/or commercial Internet websites operating under their domain names as identified on Schedule "A" hereto (the "Seller IDs"). As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeit and infringing trademarks and works which are exact copies of one or more of the Masha and the Bear Marks and Copyrighted Works (the "Counterfeit Goods"). (*See* Compl. ¶¶ 38-44; *see also* Belkova Decl. in Support of TRO ¶¶ 15-18; Declaration of Richard Guerra in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Guerra Decl. in Support of TRO") [ECF No. 5-2] ¶ 4; *see also* relevant web page captures from

Defendants' Internet based e-commerce stores and commercial websites operating under the Seller IDs displaying the Masha and the Bear branded items offered for sale ("Defendants' Seller IDs") attached as Exhibit 1[2] to the Declaration of Richard Guerra in Support of Plaintiff's Motion for Entry of Final Default Judgment ("Guerra Decl. in Support of FDJ").

Further, as admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of Plaintiff's ownership of the Masha and the Bear Marks and Copyrighted Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. (Compl. ¶ 43.) Defendants do not have, nor have they ever had, the right or authority to use the Masha and the Bear Marks and Copyrighted Works for any purpose. (*See* Belkova Decl. in Support of TRO ¶¶ 15). However, despite their known lack of authority to do so, Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their counterfeit branded goods via the Seller IDs. (*See* Compl. ¶¶ 39-47; *see also* Belkova Decl. in Support of TRO ¶¶ 15-18; Guerra Decl. in Support of TRO ¶ 4.)

Plaintiff's evidence, obtained as a result of its investigation of Defendants, clearly demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeits of the Masha and the Bear Marks and Copyrighted Works. Plaintiff's counsel retained a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Masha and the Bear branded products by Defendants and to determine Defendants' payment account data for receipt of funds paid for the sale of counterfeit versions of Plaintiff's branded products through the Seller IDs (*See* Belkova Decl. in Support of TRO ¶ 16; Guerra Decl. in Support of TRO ¶ 5.) Plaintiff's investigator accessed Defendants' Internet based e-commerce stores operating under each of the

---

[2] Due to the size restriction for filing with the CM/ECF, the exhibit to the declaration will be filed separately, in parts, in order to meet the maximum allowable size constraints.

Seller IDs, and placed orders for the purchase of various products offered for sale bearing, or suspected to be bearing, at least one of the Masha and The Bear Marks and Copyrighted Works at issue in this action from each Defendant. (*See* Belkova Decl. in Support of TRO ¶ 17.) and requested each product to be shipped to an addresses in the Southern District of Florida. At the conclusion of the process, the detailed web page captures and images of the Masha and the Bear branded items wherein orders were initiated via Defendants' Seller IDs, were sent to Plaintiff's representative for review. (*Id*. ¶¶ 17-18.)

Plaintiff's representative, who is able to identify distinctions between genuine Masha and the Bear branded merchandise and counterfeit copies of the same, reviewed and visually inspected the Masha and the Bear branded items ordered from each of the Seller IDs and by reviewing the e-commerce stores and websites operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Masha and the Bear Marks and Copyrighted Works, and determined the products were not genuine versions of Plaintiff's products. (*Id*. ¶ 18.)

**C.     Procedural Background**

On September 22, 2021, Plaintiff filed its Complaint [ECF No. 1] against Defendants. On October 4, 2021, Plaintiff filed its *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [ECF No. 5]. On October 5, 2021, the Court entered a Sealed Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order [ECF No. 8], and subsequently converted the temporary restraining order into a preliminary injunction on November 19, 2021 [ECF No. 35]. The temporary restraining order and preliminary injunction required, inter alia, any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate,

Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), and their related companies and affiliates, to identify and restrain all funds in Defendants' associated payment accounts, including all other financial accounts tied to, used by, or that transmit funds into, the respective Defendants' financial accounts, and divert those funds to a holding account for the trust of the Court. (*See* Guerra Decl. in Support of FDJ at ¶ 3.) Subsequently, Plaintiff's counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order. (*See id.*)

On October 4, 2021, Plaintiff filed its *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants [ECF No. 6][3], which the Court granted on October 5, 2021 [ECF No. 9], authorizing Plaintiff to serve the summonses, Complaint, and all subsequent filings in this matter upon foreign Defendants via e-mail and posting copies of the same on Plaintiff's designated service notice website. Pursuant to the Court's Order authorizing alternate service of process, Plaintiff served foreign Defendants by e-mail, and via publication by posting a true and correct copy of the Complaint and summons on the website https://www.dropbox.com/sh/qvce7716l5mz6jf/AABD8zNwId_qBnJu4WCF6St4a?dl=0. (*See* Guerra Decl. in Support of FDJ ¶ 4.) The time allowed for Defendants to respond to the Complaint has expired. (*See* Guerra Decl. in Support of FDJ ¶ 5.) Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. (*Id.* at ¶ 6.) To Plaintiff's knowledge, none of the Defendants are infants or incompetent persons, and, upon information and belief, the Servicemembers Civil Relief Act does not apply. (*Id.* at ¶ 7.) On

---

[3] Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants [ECF No. 5], together with supporting declarations and exhibits, are incorporated herein by reference.

December 28, 2021, Plaintiff filed its Request for Clerk's Entry of Default [ECF No. 45], and the Clerk subsequently entered default against each Defendant on December 29, 2021, for failure to appear, answer or otherwise plead to the Complaint filed herein within the time required [ECF No. 46]. Plaintiff now moves the Court to grant Final Default Judgment against Defendants and submits this Motion.

### III.   ARGUMENT

#### A.   Default Judgment Should be Entered Against Defendants.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over Defendants and venue in this district are proper under 28 U.S.C. § 1391 as Defendants direct business activities toward consumers throughout the United States, including within the State of Florida and this district and cause harm to Plaintiff's business within this jurisdiction through the Internet based e-commerce stores and websites operating under the Seller IDs. (*See* Compl. ¶¶ 1-2, 7, 38-44.)

##### 1.   Default Judgment is Proper.

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a). *See* Fed. R. Civ. P. 55. Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. *PetMed Express, Inc. v. Medpets.com*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (*citing Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)). In this case, the Complaint, pleadings, and declaration filed in support of Plaintiff's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

##### 2.   Factual Allegations Establish Defendants' Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (*citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion*, 261 F.3d at 1193 n.4 ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Further, the test to determine trademark infringement

liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217-18.

Plaintiff has also established liability for its copyright claim. "A claim for copyright infringement consists of only two elements: 1) a plaintiff must show that the plaintiff owns a valid copyright; and 2) that the defendant has engaged in unauthorized copying." *Heralds of the Gospel Foundation, Inc. v. Varela*, No. 17-cv-22281, 2017 WL 3868421, at *3 (S.D. Fla. June 23, 2017) (citing *Roig v. Star Lofts on the Bay Condominium Ass'n, Inc.*, No. 11-cv-20421, 2011 WL 6178882, at *2 (S.D. Fla. Dec. 12, 2011)). "The copying must be so extensive that there is a substantial similarity between the defendant's work and the protectible elements of the plaintiff's work." *Id.* (citing *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-cv-22539, 2015 WL 427817, at *5 (S.D. Fla. Feb. 2, 2015)).

Here, Plaintiff is the owner of several U.S. copyright registrations for moving pictures, works of literature, and artwork featuring the animated characters, Masha and The Bear. *See* Pl.'s Compl. at Composite Ex. 2; *see also* Balkova Decl. at ¶ 5. Plaintiff is also the owner of several unregistered copyrighted works that were first published in Russia and created by Russian nationals. *See* Pl.'s Compl. at Ex. 3; *see also* Balkova Decl. at ¶ 5. Both Russia and the U.S. are signatories to the Berne Convention for the Protection of Literary and Artistic Works of 1886 (the "Berne Convention"). *Flowserve U.S. Inc. v. ITT Corp.*, 68 F. Supp. 3d 646, 655 (N.D. Tex. 2014). "The Berne Convention provides that works copyrighted in signatory foreign countries and written by nationals of those countries or the United States are to be given copyright protection under United States law if first published in a nation adhering to the convention." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 886 F. Supp. 2d 1120, 1125-26 (S.D.N.Y. 1995). Therefore, the unregistered Copyrighted Works asserted herein are Berne Convention works as defined in the

9

Copyright Act of 1976, Title 17 U.S.C. §§ 101, *et seq.*, and are therefore subject to the protections of the Copyright Act. *See Itar-Tass Russian News Agency*, 886 F. Supp. 2d at 1125-26 (finding substantial likelihood that works first published in U.S. or Russia after March 1995, whose authors were Russian nationals, "are Berne Convention works under 17 U.S.C. § 101"). Foreign works that qualify as Berne Convention works are not subject to the copyright registration requirement of 17 U.S.C. § 411 before filing an infringement suit. *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 474 (E.D.N.Y. 2009).

With respect to the second element for establishing copyright infringement, comparisons of Defendants' Goods with Plaintiff's Copyrighted Works conclusively demonstrate Defendants' blatant infringement of Plaintiff's exclusive copyrights. *See* Plaintiff's Copyrighted Works (Pl.'s Compl. at Ex. 2 & 3) compared with Defendants' Seller IDs (Guerra Decl. at ¶ 4). Specifically, the evidence submitted herewith shows that Defendants' ongoing unauthorized promotion and sale of goods bearing Plaintiff's Copyrighted Works through their e-commerce stores and websites using at least the Seller IDs, directly infringes Plaintiff's exclusive rights under the Copyright Act, specifically, Plaintiff's exclusive rights to reproduce, prepare derivatives, distribute, and/or display its Copyrighted Works. 17 U.S.C. §§ 106(1), (2), (3), and (5); *see also Tiffany (NJ), LLC v. Dongping*, No. 10-cv-61214, 2010 WL 4450451, at *5 (S.D. Fla. Oct. 29, 2010) (finding unopposed declarations supporting copyright ownership and "exact duplicates" of asserted designs were "sufficient to establish liability for copyright infringement").

The well-pled factual allegations of Plaintiff's Complaint, properly allege the elements for each of the above claims. Moreover, the factual allegations in Plaintiff's Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the

Federal Rules of Civil Procedure should be entered against Defendants.

  **B.  Plaintiff's Requested Relief Should be Granted.**

    **1.  Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (*citing Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of Plaintiff's intellectual property rights, including the Masha and the Bear Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, and based upon the issuance of the temporary restraining order and

preliminary injunction entered in this matter, Plaintiff has clearly carried its burden on each of the four factors, warranting permanent injunctive relief, because Defendants have unlawfully used Plaintiff's goodwill to make a profit. Accordingly, permanent injunctive relief is appropriate.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiff's reputation, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiff's trademarks and copyrights. The facts alleged in Plaintiff's Complaint, substantiated by the evidence submitted herewith, show Defendants are "continuously infringing and inducing others to infringe" the Masha and the Bear Marks and Copyrighted Works by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the Masha and the Bear Marks and Copyrighted Works. (*See* Compl. ¶ 55.)

Plaintiff is clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined. (*See* Belkova Decl. in Support of TRO ¶ 22.) " sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). In any event, Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Compl. ¶ 59.) Defendants have defaulted upon Plaintiff's factual allegations in that respect.

Additionally, Plaintiff has no adequate remedy at law so long as Defendants continue to use Plaintiff's trademarks and copyrights in connection with the operation of their Internet based e-commerce stores under the Seller IDs because Plaintiff will have no control of the quality of

what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill which will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiff's trademarks and copyrights, whereas Plaintiff faces hardship from loss of sales and its inability to control its reputation. In reality, Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added) (citation omitted)); *BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.") Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiff's property interest in its trademarks and copyrights.

Furthermore, as admitted by Defendants through default, (i) the Seller IDs and associated payment accounts are essential components of Defendants' online activites, and (ii) the Seller IDs themselves are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. (*See* Compl. ¶ 25.) Therefore, in order to effectuate the injunction as a practical matter, all listings and associated images of goods bearing counterfeits and/or infringements of the Masha and the Bear Marks and Copyrighted Works via the Seller IDs should be permanently removed by the applicable governing Internet marketplace platform

operators and/or administrators. Absent the removal of all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Masha and the Bear Marks and Copyrighte Works, Defendants will remain free to continue infringing Plaintiff's trademarks and copyrights with impunity, will continue to benefit from the Internet traffic to those e-commerce stores and websites built through the unlawful use of the Masha and the Bear Marks and Copyrighted Works, and will continue to defraud the public by their illegal activities. The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based counterfeiting and infringement scheme and are profiting from the deliberate misappropriation of Plaintiff's rights. Accordingly, the Court should eliminate the means by which Defendants conduct their unlawful activities to further prevent the use of these instrumentalities of infringement.[4]

---

[4] *See e.g., Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63119-RKA (S.D. Fla. Apr. 27, 2020) (Order requiring, *inter alia*, the Internet marketplace website operators and/or administrators for the Seller IDs, to permanently remove all listings and associated images of products bearing counterfeits and/or using infringements of plaintiff's trademarks under the seller identification names used/controlled by defendants); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63109-RKA (S.D. Fla. Mar. 31, 2020) (same); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-CV-62102-RKA (S.D. Fla. Nov. 5, 2019, docketed Nov. 6, 2019) (same), *Gucci America, Inc., v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61447-RKA (S.D. Fla. Oct. 15, 2019, docketed Oct. 16, 2019) (same); *Tiffany (NJ) LLC, v. account n*, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019, docketed Aug. 19, 2019) (same). *See also Malletier v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-61021-MGC,

> **2.     Damages as to Count I for Trademark Counterfeiting and Infringement.**

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (*citing Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no

---

2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); *Chanel, Inc. v. Fendona*, No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same); *Fendi S.R.L. v. Joe Bag*, No. 19-cv-61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); *Adidas AG v. gshwjs*, Case No. 19- cv-61811-RS (S.D. Fla. Nov. 25, 2019) (same); *Apple Corps Limited v. Alvis Bronte*, Case No. 19-cv-60928-UU (S.D. Fla. June 24, 2019) (same); *YETI Coolers, LLC v. allramblerdeal.com*, Case No. 18-cv-62811-WPD (S.D. Fla. May 31, 2019) (same).

exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

The Masha and the Bear Marks are renowned worldwide as identifiers of high quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiff's goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from Plaintiff's reputation, to Plaintiff's detriment. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (*citing Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence clearly establishes that each Defendant intentionally copied one or more of the Masha and the Bear Marks for the purpose of deriving the benefit of Plaintiff's world-

famous reputation. In addition, Defendants defaulted on Plaintiff's allegations of willfulness. (*See* Compl. ¶ 46.) *See Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default). As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were in fact counterfeits of at least, one of the Masha and the Bear Marks. (*See* Compl. ¶¶ 39-47; Belkova Decl. in Support of TRO ¶¶ 3-5; Guerra Decl. in Support of TRO ¶ 5 and Exhibit 1 to Guerra Decl. in Support of FDJ.) In cases involving the same merits, issues, and requests for damages, this Court has found similar evidence of record sufficient to establish a defendant's infringement and enter a final default judgment and permanent injunction accordingly. *See, e.g.*, *Fendi S.R.L.. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-CV-61724-RNS (S.D. Fla. Dec. 22, 2020, docketed Dec. 23, 2020). Based on the above considerations, Plaintiff respectfully suggests the Court award statutory damages in the amount of $100,000.00 against each Defendant.

Plaintiff's suggested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and

17

others have granted statutory damages under the Lanham Act similar to Plaintiff's request herein.[5]

### 3. Damages as to Count II for False Designation of Origin, Count III for Common Law Unfair Competition, and Count IV for Common Law Trademark Infringement.

Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), common law of unfair competition (Count III), and common law trademark infringement (Count IV). As to Counts II, III, and IV the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Counts II, III, and IV should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.[6]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Date: January 17, 2022            Respectfully submitted by,

THE BRICKELL IP GROUP, PLLC

---

[5] *See, e.g., Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63119-RKA (S.D. Fla. Apr. 27, 2020) (awarding Plaintiff $1,000,000.00 against each Defendant); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63109-RKA (S.D. Fla. Mar. 31, 2020) (same); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-CV-62102-RKA (S.D. Fla. Nov. 5, 2019, docketed Nov. 6, 2019) (same); *Gucci America, Inc., v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61447-RKA (S.D. Fla. Oct. 15, 2019, docketed Oct. 16, 2019) (same); *Tiffany (NJ) LLC, v. account n*, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019, docketed Aug. 19, 2019) (same). *See also Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256 (S.D. Fla. 2019) (Bloom, B.) (same); *Malletier v. Individuals, P'ship*, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); *Fendi S.R.L. v. Joe Bag*, No. 19-cv- 61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); *Chanel, Inc. v. Fendona*, No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same); *Adidas AG v. gshwjs, et al.*, Case No. 19-cv-61811-RS (S.D. Fla. Nov. 25, 2019) (same); *Apple Corps Limited v. Alvis Bronte*, Case No. 19-cv-60928-UU (S.D. Fla. June 24, 2019) (same); *YETI Coolers, LLC v. allramblerdeal.com*, Case No. 18-cv-62811-WPD (S.D. Fla. May 31, 2019) (same); *Louis Vuitton Malletier, S.A. v. Beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Mar. 22, 2019) (same).

[6] Plaintiff is electing not to pursue statutory damages or actual damages under the Copyright Act and is only seeking equitable relief in the form of a permanent injunction with respect to its copyright infringement claim.

>1101 Brickell Avenue
>South Tower, Suite 800
>Miami FL, 33131
>Tel: 305-728-8831
>Fax: 305-428-2450
>
>*/s/ Nicole Fundora*
>Richard Guerra
>Fla. Bar No. 689521
>Email: rguerra@brickellip.com
>Nicole Fundora
>Fla. Bar No. 1010231
>Email: nfundora@brickellip.com
>*Counsel for Plaintiff*