UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:21-cv-61993-WPD

ANIMACCORD LTD.,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

      Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

THIS MATTER comes before the Court upon Plaintiff's Animaccord, Ltd. ("Plaintiff"),

Motion for Entry of Final Default Judgment (the "Motion") [DE 49], filed on January 17, 2022. A

Clerk's Default, [DE 46], was entered against Defendants on December 29, 2021, as Defendants

failed to appear, answer, or otherwise plead to the Complaint, [DE 1], despite having been served.

*See* [DE 28]. The Court notes that Defendants failed to respond to the Court's January 18, 2022

Order to Show Cause why the Motion should not be granted. *See* [DE 53]. The Court has carefully

considered the Motion, the record in this case, the applicable law, and is otherwise fully advised.

For the following reasons, Plaintiff's Motion [DE 49] is **GRANTED**.

I.      **INTRODUCTION**

Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the

Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to § 43(a) of the Lanham Act,

15 U.S.C. § 1125(a); copyright infringement under the Copyright Act, 17 U.S.C. §§ 106(1), (3),

(4) & 501, and common law unfair competition; and common law trademark infringement.

The Complaint alleges that Defendants are advertising, promoting, distributing, and performing Plaintiff's copyrighted works using counterfeits and confusingly similar imitations of Plaintiff's registered trademarks within the Southern District of Florida by operating the Defendants' Internet based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment (the "Seller IDs").

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have 1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to consumers; (2) defrauded consumers into thinking Defendants' illicit copies of Plaintiff's copyrighted works are authorized by Plaintiff; (3) deceived the public as to Plaintiff's sponsorship of and/or association with Defendants' counterfeit products and the websites on online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of the Plaintiff's trademarks; and (5) wrongfully damaged Plaintiff's ability to market its branded products and copyrighted works and products and educate consumers about its brand via the Internet in a free and fair marketplace.

In its Motion, Plaintiff seeks the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, common law trademark infringement, and infringement of copyright. Plaintiff further requests that the Court (1) enjoin Defendants unlawful use of Plaintiff's trademarks and copyrighted works; (2) award Plaintiff damages; and (3) instruct any third party

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order.

financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to the Plaintiff in partial satisfaction of the award of damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default … ."). Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.

## II.    FACTUAL BACKGROUND[2]

Plaintiff Animaccord Ltd. is the registered owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Masha and the Bear Marks"):

---

[2] The factual background is taken from Plaintiff's Complaint, [ECF No. 1], Plaintiff's Motion for Entry of Final Default Judgment and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | First Use Date | Classes / Goods |
|---|---|---|---|---|
|  | 4,790,909 | 08/11/2015 | 4/15/2015 | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; <br><br>IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens; <br><br>IC 018: Backpacks; <br><br>IC 025: Apparel, namely, T-shirts and shoes; <br><br>IC 028: Toys, namely, dolls, stuffed toys, board games and card games; and <br><br>IC 030: Candy. |
| MASHA AND THE BEAR | 4,790,906 | 08/11/2015 | 08/04/2012 | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; and <br><br>IC 041: Entertainment services, namely, production of motion picture films and motion picture film distribution services rendered through the media of cable television, broadcast television, and the Internet. |

| Trademark | Registration Number | Registration Date | First Use Date | Classes / Goods |
|---|---|---|---|---|
| MASHA AND THE BEAR | 5,420,550 | 03/13/2018 | 06/16/2016 | *See* n. 3 below[3] |

---

[3] IC 003: Non-medicated soaps; almond soaps; antiperspirant soap; balms other than for medical or pharmaceutical purposes, namely, lip balms, body balms; bath salts, not for medical purposes; breath freshening sprays; breath freshening strips; cakes of toilet soap; cleaning preparations; cosmetic creams; cosmetic kits comprised on non-medicated cosmetics; cosmetics; cosmetic cotton wool; deodorant soap; deodorants for human beings or for animals; disinfectant soap; dry shampoos; dry cleaning preparations; hair lotions; hair sprays; laundry preparations, namely, laundry detergents, laundry softener, laundry bleach; lip glosses; lipstick; lipstick cases; lotions for cosmetic purposes; make-up; medicated soaps; mouth washes, not for medical purposes; mouthwashes; nail varnish; nail polish; nail art stickers; perfumes; shampoos; toilet water; toiletries, namely, non-medicated toiletry preparations; eau de cologne; perfumery; scented body splash water;

IC 012: Vehicles, namely, bicycles, tricycles, sleighs, kick sledges, baby carriages, prams, pushchairs, strollers; bicycles; tricycles; sleighs for transport purposes; kick sledges; baby carriages; prams; pushchairs; strollers; scooters, namely, motor scooters;

IC 014: Precious metals; jewelry; jewelry cases; imitation jewelry; clocks; wall clocks; electronic clocks; alarm clocks; clocks and watches; stands for clocks; horological instruments; chronometric instruments; precious stones; key rings of precious metal; watches;

IC 015: Accordions; cases for musical instruments; castanets; drums; drumsticks; electric musical instruments; flutes; guitars; harmonicas; horns; music synthesizers; music stands; musical boxes; pianos; saxophones; stands for musical instruments; tambourines; triangles; trombones; trumpets; violins; xylophones; musical instruments; basses;

IC 020: Furniture; furniture shelves; furniture of metal; figurines of wood, wax, plaster or plastic; fans for personal use, non-electric; air pillows, not for medical purposes; air mattresses, not for medical purposes; armchairs; baby changing mats; baskets, not of metal, namely, baker's bread baskets, Moses baskets; bead curtains for decoration; bed bases; bedding, except linen, namely, bed frames, bumper guards for cribs; beds; benches; bolsters; book rests; bottle caps, not of metal; cases of wood or plastic; bins of wood or plastic; boxes of wood or plastic; chests of drawers; chests for toys; clothes hooks, not of metal; coat hangers; clothes hangers; coat stands; containers, not of metal for storage and transport; costume stands; cupboards; curtain rings; curtain rails; curtain rollers; curtain pins; curtain rods; curtain hooks; curtain fittings; cushions; deck chairs; decorations of plastic for foodstuffs; desks; divans; door handles, not of metal; door bells, not of metal, non-electric; door knockers, not of metal; doors for furniture; dressing tables; easy chairs; embroidery frames; toilet mirrors being hand-held mirrors; head-rests; high chairs for babies; house numbers, not of metal, non-luminous; hydrostatic beds, not for medical purposes; identification bracelets, not of metal; indoor window blinds; infant walkers; inflatable furniture; inflatable publicity objects; keyboards for hanging keys; ladders of wood or plastics; letter boxes not of metal or masonry; lockers; mats for infant playpens; mattresses; medicine cabinets; mirrors; decorative mobiles; office furniture; packaging containers of plastic; paper blinds; picture frames; pillows; placards of wood or plastics; plastic key cards, not encoded and not magnetic; playpens for babies; school furniture; chairs; shelves for storage; writing desks; sleeping bags for camping; sofas; stuffed animals; tables; tables of metal; tea trolleys; interior textile window blinds; tool and tool accessory trays, not of metal; umbrella stands; wall-mounted diaper changing platforms; table tops; slatted indoor blinds;

IC 021: Aerosol dispensers, not for medical purposes; baby bathtubs, portable; baskets for domestic use; bottles, sold empty; bowls; brushes, namely, toothbrushes, hair brushes; buckets; buckets made of woven fabrics; non-electric candelabra; candy boxes; ceramics for household purposes, namely, ceramic figurines, ceramic vases, ceramic vessels, bowls, plates and pots; coffeepots, non-electric; combs; electric combs; comb cases; confectioners' decorating bags; containers for household or kitchen use; cookery molds; cookie jars; cooking pots; cosmetic utensils, namely, cosmetic brushes; cups; cups of paper or plastic; dishes; disposable table plates; drinking bottles for sports; drinking glasses; dustbins; egg cups; floss for dental purposes; cups for eating fruits; frying pans; glass jars; glass bowls; gloves

5

| Trademark | Registration Number | Registration Date | First Use Date | Classes / Goods |
|---|---|---|---|---|
| MASHA AND THE BEAR | 4,800,025 | 08/25/2015 | 04/15/2015 | IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens;<br><br>IC 018: Backpacks;<br><br>IC 025: Apparel, namely, T-shirts and shoes;<br><br>IC 028: Toys, namely dolls, stuffed toys, board games and card games;<br><br>IC 030: Candy. |

*See* Composite Exhibit 1 to Complaint, ECF No. [1-1] containing Certificates of Registrations for

the Masha and the Bear Marks at issue. The Masha and The Bear Marks are used in connection

with the design, marketing, and distribution of high-quality goods in at least the categories

identified above. *See* Declaration of Iuliia Belkova, ECF No. [5-1] at 4. Plaintiff has exclusive

rights in and to the Masha and the Bear Marks. *Id*.

Plaintiff is also the owner of the following copyrights registered in the United States of

America:

---

for household purposes; hot pots; ice buckets; ice cube molds; kitchen containers; lunch boxes; mugs; napkin holders; painted beverage glassware; paper plates; perfume vaporizers sold empty; perfume sprayers; porcelain ware, namely, mugs, statuettes; pots; pottery, namely, mugs, statuettes; salad bowls; soap holders; dishes for soap; soap boxes; soup bowls; straws for drinking; sugar bowls; tableware, other than knives, forks and spoons, namely, scoops for serving or portioning; tea services in the nature of tableware; teapots; toothbrushes, electric; toothbrushes; toothpicks; trays for domestic purposes; trays for domestic purposes, of paper; vases; vegetable dishes; and

IC 024: Textile material; bed covers; plastic table covers; bed linen; tablecloths, not of paper; handkerchiefs of textiles; travelling rugs; towels of textile; bed blankets; shower curtains of textile or plastic; curtains of textile or plastic; net curtains; table runners, not of paper; oilcloth for use as tablecloths.

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VA 1-835-810 | Aug. 21, 2012 | Masha and the Bear Logo |
| PA 1-813-099 | July 12, 2012 | First day of school |
| PA 1-813-100 | July 12, 2012 | Laundry day |
| PA 1-813-101 | July 12, 2012 | Holiday on ice |
| PA 1-813-102 | July 12, 2012 | One, two, three! Light the Christmas tree! |
| PA 1-813-103 | July 12, 2012 | Recipe for disaster |
| TX 8-552-180 | Dec. 27, 2017 | Masha and the Bear: A Magical Holiday |
| TX 8-588-442 | Aug. 14, 2017 | Masha and the Bear: A Spooky Bedtime |
| TX 8-431-770 | June 23, 2017 | Masha and the Bear: Kidding Around! |
| TX 8-537-380 | Dec. 27, 2017 | Masha and the Bear: The Best Birthday |
| TX 8-444-776 | Aug. 7, 2017 | Masha and the Bear: The Girl Who Called Wolf |

*Id* at 5. Moreover, Plaintiff is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 35 of the Complaint and in Exhibit 3 thereto, [ECF No. 1-3]. *See* Declaration of Iuliia Belkova, [ECF No. 5-1] at 5. Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." Plaintiff has exclusive rights in and to the Copyrighted Works. *Id*.

Defendants, through the various Internet based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" hereto (the "Seller IDs") have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works under what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Masha and the Bear Marks and Copyrighted Works. *See* Declaration of Iuliia Belkova, [ECF No. 5-1] at 15-18; *see also* Declaration of Richard Guerra, [ECF No. 5-2] at 4.

Although each Defendant may not copy and infringe each of Plaintiff's trademarks for each category of services protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Masha and the Bear Marks and the Copyrighted Works at issue. *See* Declaration of Iuliia Belkova, [ECF No. 5-1] at 15-18, and Schedule "E" to

Declaration of Richard Guerra[4]. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the Masha and the Bear Marks and/or reproduce or distribute the Copyrighted Works. *See* Declaration of Iuliia Belkova, [ECF No. 5-1] at 15-18.

As part of its ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiff hired a third party investigatory to access Defendants' Internet based e-commerce stores operating under each of the Seller IDs.  The third party investigator initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of, at least one of the Masha and The Bear Marks or Copyrighted Works, and requested each product to be shipped to an address in the Southern District of Florida. Accordingly, Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States. *See* Declaration of Richard Guerra [ECF No. 5-2] at 5. A representative for Plaintiff personally analyzed the Masha and The Bear branded items wherein orders were initiated via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Masha and The Bear Marks and Copyrighted Works, and concluded the products were non-genuine, unauthorized Masha and The Bear products.  *See* Declaration of Iuliia Belkova, [ECF No. 5-1] at 18.

## III.    ANALYSIS

### A.    Claims

#### 1.    Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

---

[4] Evidence of each Defendant's infringement was attached as Exhibit 1 to the Declaration of Richard Guerra in Support of Plaintiff's Motion for Entry of Final Default Judgment.  Due to the size restriction for filing with the CM/ECF, the exhibit to the declaration was filed separately, in parts, in order to meet the maximum allowable size constraints on January 17, 2022.

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

**2.     False Designation of Origin Pursuant to § 43(A) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)**

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

**3.     Common Law Unfair Competition and Trademark Infringement (Counts III and IV)**

Whether a defendant's use of a Plaintiff's trademarks created a likelihood of confusion between the Plaintiff's and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)"); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### 4.      Infringement of Copyright (Count V)

To prevail on a claim of direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4), Plaintiff must "satisfy two requirements to present a *prima facie* case of direct copyright infringement: (1) they must show ownership of the allegedly infringed material, and (2) they must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). *See also Disney Enters. v. Hotfile Corp.*, Case No. 11-20427-CIV-Williams, 2013 U.S. Dist. LEXIS 172339, at *94 (S.D. Fla. 2013).

### B.      Liability

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for

each of the claims described above. *See* [ECF No. 1]. Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* [ECF No. 1]. Further, the Complaint alleges, and the unauthorized Masha and The Bear products sold, offered for sale, marketed, advertised, and distributed by Defendants are nearly identical to Plaintiff's genuine Masha and The Bear products and that consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. *See id.* "The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff." *See* [ECF No. 1], at 40.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its Masha and The Bear products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks and copyrights, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.

### D.      Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or

13

service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a Plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 U.S. Dist. LEXIS 56475, at *22-*23 (S.D. Fla. Apr. 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d

1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied the Masha and the Bear Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact counterfeits of at least one of the Masha and the Bear Marks. *See* [ECF No. 1]. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $100,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.     Damages for False Designation of Origin

Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

**F.    Damages for Common Law Unfair Competition and Trademark Infringement**

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.[5]

**IV.    CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion [DE 49] is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Fort Lauderdale, Broward County, Florida, this 1st day of February, 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

cc:    counsel of record

---

[5] Plaintiff is electing not to pursue statutory damages or actual damages under the Copyright Act and is only seeking equitable relief in the form of a permanent injunction with respect to its copyright infringement claim.

16